## Commonwealth v. Loverso

*Edward J. Blatt,* district attorney, for Commonwealth.

*Alvin B. Coppolo,* for defendant.

TRAMBLEY, P. J., March 5, 1954.—This is an appeal by Joseph Loverso from a conviction before a justice of the peace on a charge of illegally killing a domestic animal, a dog, in violation of section 23 of the Pennsylvania Dog Law.

From the evidence it appears that Leo Lecker of St. Marys, Pa., had owned a hound hunting dog about 12 to 14 inches high for three years. This dog was duly licensed for the year 1953 and wore a license tag. Mr. Lecker also owned a child's dog, a Spitz. On the afternoon of November 14, 1953, Mr. Lecker returned home from hunting at about noon. His sons, Marvin and Bobby, took the dogs into the front yard to play with them.

Defendant, who is 18 years of age, was returning from hunting, passing the Lecker home enroute to his own home which was about a half mile away. Mr. Loverso had never passed the Lecker home on foot previous to this but had driven past in a car. He had never seen the dogs before, has never owned a dog and knows nothing about dogs.

Defendant had his shot gun with him and as he approached the Lecker home the dog ran up the road toward him and barked at him, the hound pushing the Spitz away and continuing to bark at defendant. The hound apparently approached to within a very short distance of defendant and continued to bark at him. Defendant loaded his gun at sometime after the dog started barking at him and running toward him. The dogs did not snap at him. As the dogs approached, the larger dog, the Spitz, stopped but the hunting dog con-

tinued toward defendant until he was "right up to" him.

Defendant says he thought that the dog was going to bite him because he was barking and showing his teeth, that he tried to scare the dog away but the dog wouldn't go and kept coming right at him. He then further stated that he did not know which dog was going to bite him. Defendant was asked twice on cross-examination whether the hound dog had jumped on him or attacked him but he failed to answer in both instances. As the hound dog then continued to bark and show his teeth near defendant, defendant shot it, killing it instantly.

The owner of the dog, Leo Lecker, had a warrant issued for the arrest of defendant charging him with unlawfully killing the hound hunting dog in violation of section 23 of the Pennsylvania Dog Law. After a hearing before a justice of the peace at St. Marys, Pa., defendant was found guilty and was fined $50 and the costs. From this judgment and sentence defendant has appealed to this court.

Section 23 of the Act of May 11, 1921 P. L. 522, 3 PS §482, provides in part as follows:

"Except as provided in section 22 of this act, it is unlawful for any person, except a police officer, to kill, injure, or poison, or to attempt to kill, injure, or poison, any dog which bears a license tag for the current year."

The exceptions referred to in section 23, supra, are contained in section 22 of the Act of May 11, 1921, P. L. 522, as amended, and insofar as they are pertinent to this case are as follows:

"Any person may kill any dog which he sees in the act of pursuing, worrying, or wounding any livestock, or wounding or killing poultry, or attacking human beings, whether or not such dog bears the license tag required by the provisions of this act. There shall be

no liability on such persons in damages or otherwise for such killing."

Under the above portions of the act of assembly the only way in which defendant can justify his action in killing this dog would be to establish that the dog was attacking him. Defendant claims that the dog approached him, barked at him and showed his teeth and that from these actions on the part of the dog he was convinced that the dog was about to bite him. He admits that he had never owned a dog and that he knows nothing about dogs. It appears that the owner of the dog and defendant had no personal feelings against each other.

Were the actions of the dog in this case of such a nature as to really make a person of reasonable intelligence believe that this dog was about to attack him? If so could not defendant have resorted to less drastic action to protect himself? It does not appear clearly from the testimony at just what point defendant loaded his gun nor how far he was from the dogs at the time. He states that he did not load his gun until after he saw the dogs approaching him but does not say how far they were from him at that time. It is a recognized fact among hunters that hunting dogs, on seeing a man with a gun, will exhibit such actions as barking and jumping. Having been trained to hunt, when they see a man with a gun, they seem to understand that it is the forerunner of a trip to the woods in pursuit of game, and this arouses their natural instinct to pursue game and they express their feelings by barking and jumping around in the neighborhood or vicinity of the person having the gun.

We do not believe that the actions of the dog in this case were sufficient to cause a reasonable person to believe that the dog was actually going to attack or bite him. It is significant that defendant twice failed to answer when he was asked whether or not the dog

had jumped on him or had attacked him. If it had he should have so testified. By his failing to answer we can only assume that it did not and that defendant, therefore, was not justified in killing the dog.

The court, therefore, makes the following

### Order

Now, March 5, 1954, the court finds defendant guilty as charged and sentences defendant to pay a fine of $50 and the costs of prosecution or in lieu thereof to undergo imprisonment in the common jail of Elk County for a period not exceeding 30 days.